# EXHIBIT B

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

———————————————————————————X

EVANA ALEXANDER,                                      Index No.:

        Plaintiff,

v.                                                   **VERIFIED COMPLAINT**

MIDLAND CREDIT MANAGEMENT, INC;
LVNV FUNDING, LLC;
RESURGENT CAPITAL SERVICES, LP,
IQ DATA INTERNATIONAL, INC.; SEZZLE INC;
VERIZON WIRELESS SERVICES, LLC;
FINGERHUT; WEBBANK; SELF FINANCIAL, INC.;
EQUIFAX INFORMATION SERVICES, LLC;
EXPERIAN INFORMATION SOLUTIONS, INC.,
AND TRANS UNION, LLC,

        Defendants.

———————————————————————————X

By and through the undersigned counsel, Plaintiff Evana Alexander ("Plaintiff"), with knowledge as to her own acts and investigation of counsel as to the acts of others, believing that further investigation and discovery will confirm that such allegations have substantial evidentiary support, alleges as follows:

## PRELIMINARY STATEMENT

1. Pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"), and the New York Fair Credit Reporting Act, NY General Business Law § 380 et seq. ("NY FCRA"), Plaintiff brings this action against Midland Credit Management, Inc. ("MCM"), LVNV Funding, LLC ("LVNV"), Resurgent Capital Services, LP ("Resurgent"), IQ Data International, Inc. ("IQ Data"), Sezzle Inc ("Sezzle"), Verizon Wireless Services, LLC ("Verizon Wireless"), Fingerhut ("Fingerhut"), WebBank ("WebBank"), Self Financial, Inc.

Case 1:26-cv-00647-GHW    Document 3-2    Filed 01/26/26    Page 3 of 68

(Self Financial), Equifax Information Services, LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union LLC ("Trans Union") ( together Equifax, Experian and Trans Union are the "CRAs," or "CRA Defendants") to recover actual, statutory, and punitive damages, as well as costs and attorney's fees and injunctive relief.

2. Congress enshrined within the FCRA the "need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." § 1681(a)(4).

3. Moreover, Congress has plainly stated the purpose of the FCRA is "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information . . . ." § 1681(b).

4. Similarly, courts have stated that the purpose of the FCRA is to address the "serious problem in the credit reporting industry. . . of inaccurate or misleading information." *Kilpakis v. JPMorgan Chase Fin. Co., LLC*, 229 F. Supp. 3d 133, 142 (E.D.N.Y. 2017) (internal quotation marks and emphasis omitted); *see also, e.g., Porter v. Talbot Perkins Children's Servs.*, 355 F. Supp. 174, 176 (S.D.N.Y. 1973) (noting that "[t]he purpose of the Fair Credit Reporting Act is to protect an individual from inaccurate or arbitrary information about [that individual from appearing] in a consumer report . . . ") (citing 116 Cong. Rec. 36572 (1970)).

### *MCM account*

5. As set forth herein, Defendants MCM, Equifax, Experian and Trans Union denied Plaintiff the protections provided by the FCRA and the NY FCRA concerning the fraudulent MCM account, account number 32193XXXX (hereinafter referred to as the "MCM account").

6.  In May 2025, Plaintiff sent dispute letters to Equifax, Experian and Trans Union informing the CRA Defendants that CRA Defendants were reporting a fraudulent MCM account on Plaintiff's Equifax, Experian and Trans Union credit reports. Nevertheless, Equifax, Experian and Trans Union continued to report the fraudulent MCM account on Plaintiff's Equifax, Experian and Trans Union credit reports.

7.  In July 2025, Plaintiff sent a second round of dispute letters to Equifax, Experian and Trans Union once again informing the CRA Defendants that CRA Defendants were reporting a fraudulent MCM account on Plaintiff's Equifax, Experian and Trans Union credit reports. Nevertheless, Equifax, Experian and Trans Union once again continued to report the fraudulent MCM account on Plaintiff's Equifax, Experian and Trans Union credit reports.

8.  Upon information and belief, after receiving notice of Plaintiff's disputes from Equifax, Experian and Trans Union and notwithstanding the fact that MCM *knew* that the fraudulent account it was reporting to the CRA Defendants did not belong to the Plaintiff, MCM repeatedly verified the inaccurate information to Equifax, Experian and Trans Union.

9.  Despite Plaintiff's disputes, the CRA Defendants did not correct the fraudulent MCM account CRA Defendants were reporting. Upon information and belief, the CRA Defendants continue to report the fraudulent account, as belonging to Plaintiff.

10. MCM is liable to Plaintiff for violating § 1681s-2(b) of the FCRA by its acts and omissions, including but not limited to:

   a.  failing to conduct reasonable investigations of Plaintiff's disputes of the fraudulent MCM account reporting on Plaintiff's credit reports with Equifax, Experian, and Trans Union.

3

INDEX NO. 650029/2026

Case 1:26-cv-00647-GHW    Document 3-2    Filed 01/26/26    Page 5 of 68

    b. failing to review all relevant information provided to MCM by the CRA Defendants concerning Plaintiff's disputes; and

    c. failing to promptly modify, delete, or permanently block any and all disputed information about the fraudulent MCM account on Plaintiff's credit file with the CRA Defendants that MCM could not affirmatively verify as accurate.

11. Similarly, Equifax, Experian and Trans Union are liable to Plaintiff for violations of several provisions of § 1681i of the FCRA due to its acts and omissions, including, but not limited to, the following:

    a. failing to (i) conduct reasonable investigations of the fraudulent MCM account to determine whether the information Plaintiff disputed was accurate, and (ii) record the correct status of the fraudulent MCM account, in violation of § 1681i(a)(1);

    b. failing to review and consider all relevant information communicated by Plaintiff concerning Plaintiff's disputes about the fraudulent MCM account, in violation of § 1681i(a)(4); and

    c. failing to promptly update the disputed fraudulent MCM account tradeline on Plaintiff's credit file despite the fact that the CRA Defendants could not have affirmatively verified the fraudulent MCM account as accurate upon a lawful reinvestigation of Plaintiff's disputes, in violation of § 1681i(a)(5).

12. As a direct and proximate result of each Defendant's negligent and willful actions, conduct, and omissions, Plaintiff suffered actual damages, cognizable pursuant to the FCRA. Such damages include but are not necessarily limited to the following: impediments to

Case 1:26-cv-00647-GHW     Document 3-2     Filed 01/26/26     Page 6 of 68

Plaintiff's ability to seek credit, damage to Plaintiff's reputation for creditworthiness, emotional distress, embarrassment, aggravation, and frustration.[1]

13. Each Defendant's willful violations of the FCRA entitles Plaintiff to an award of punitive damages.

### *LVNV/ Resurgent account*

14. As set forth herein, Defendants LVNV, Resurgent, Equifax and Experian denied Plaintiff the protections provided by the FCRA and the NY FCRA concerning the fraudulent LVNV account, account number ending with digits *5297 (hereinafter referred to as the "LVNV/Resurgent account").

15. In August 2025, Plaintiff sent dispute letters to Equifax and Experian informing that CRAs Equifax and Experian were reporting a fraudulent LVNV/Resurgent account on Plaintiff's Equifax and Experian credit reports. Nevertheless, Equifax and Experian continued to report the fraudulent LVNV/Resurgent account on Plaintiff's Equifax and Experian credit reports.

16. Upon information and belief, after receiving notice of Plaintiff's disputes from Equifax and Experian, and notwithstanding the fact that LVNV and Resurgent *knew* that the fraudulent LVNV/Resurgent account, it was reporting to Equifax and Experian did not belong to Plaintiff, LVNV and Resurgent repeatedly verified the fraudulent LVNV/Resurgent account to Equifax and Experian.

17. Despite Plaintiff's disputes, Equifax and Experian did not correct the fraudulent LVNV/Resurgent account Equifax and Experian were reporting. Upon information and

---

[1] Plaintiff may have also suffered direct credit harm due to Defendants' violations of the FCRA and NY FCRA. Plaintiff intends to inquire into the extent of direct credit harm she may have suffered through discovery from Defendants and third-parties.

belief, Equifax and Experian continued to report the fraudulent LVNV/Resurgent account, as belonging to the Plaintiff.

18. LVNV and Resurgent are liable to Plaintiff for violating § 1681s-2(b) of the FCRA by its acts and omissions, including but not limited to:

    a. failing to conduct reasonable investigations of Plaintiff's disputes of the fraudulent LVNV/Resurgent account reporting on Plaintiff's credit reports with Equifax and Experian;

    b. failing to review all relevant information provided to LVNV and Resurgent by Equifax and Experian concerning Plaintiff's disputes; and

    c. failing to promptly modify, delete, or permanently block any and all disputed information about the fraudulent LVNV/Resurgent account on Plaintiff's credit file with Equifax and Experian that LVNV and Resurgent could not affirmatively verify as accurate.

19. Similarly, Equifax and Experian are liable to Plaintiff for violations of several provisions of § 1681i of the FCRA due to its acts and omissions, including, but not limited to, the following:

    a. failing to (i) conduct reasonable investigations of the fraudulent LVNV/Resurgent account to determine whether the information Plaintiff disputed was accurate, and (ii) record the correct status of the fraudulent LVNV/Resurgent account, in violation of § 1681i(a)(1);

    b. failing to review and consider all relevant information communicated by Plaintiff concerning Plaintiff's disputes about the fraudulent LVNV/Resurgent account in violation of § 1681i(a)(4); and

   c.    failing to promptly update the disputed LVNV/Resurgent account tradeline on Plaintiff's credit file despite the fact that Equifax and Experian could not have affirmatively verified the fraudulent LVNV/Resurgent account tradeline as accurate upon a lawful reinvestigation of Plaintiff's disputes, in violation of § 1681i(a)(5).

20. As a direct and proximate result of each Defendant's negligent and willful actions, conduct, and omissions, Plaintiff suffered actual damages, cognizable pursuant to the FCRA. Such damages include but are not necessarily limited to the following: impediments to Plaintiff's ability to seek credit, damage to Plaintiff's reputation for creditworthiness, emotional distress, embarrassment, aggravation, and frustration.[2]

21. Each Defendant's willful violations of the FCRA entitles Plaintiff to an award of punitive damages.

### *IQ Data account*

22. As set forth herein, Defendants IQ Data, Experian and Trans Union denied Plaintiff the protections provided by the FCRA and the NY FCRA concerning the fraudulent IQ Data account, account number IQD0DHM010903**** (hereinafter referred to as the "IQ Data account").

23. In May 2025, Plaintiff sent dispute letters to Experian and Trans Union informing the CRAs Experian and Trans Union that they were reporting a fraudulent IQ Data account on Plaintiff's Experian and Trans Union credit reports. Nevertheless, Experian and Trans Union continued to report the fraudulent IQ Data account on Plaintiff's Experian and Trans Union credit reports.

---

[2] Plaintiff may have also suffered direct credit harm due to Defendants' violations of the FCRA and NY FCRA. Plaintiff intends to inquire into the extent of direct credit harm she may have suffered through discovery from Defendants and third-parties.

24. In July 2025, Plaintiff sent a second dispute letter to Experian and Trans Union once again informing the CRA Experian and Trans Union that they were reporting a fraudulent IQ Data account on Plaintiff's Experian and Trans Union credit reports. Nevertheless, Experian and Trans Union continued to report the fraudulent IQ Data account on the Plaintiff's Experian and Trans Union credit reports.

25. Upon information and belief, after receiving notice of Plaintiff's disputes from Experian and Trans Union and notwithstanding the fact that IQ Data *knew* that the fraudulent IQ Data account it was reporting to the CRA Defendants did not belong to Plaintiff, IQ Data repeatedly verified the fraudulent IQ Data account to Experian and Trans Union.

26. Despite Plaintiff's disputes, Experian and Trans Union did not correct the fraudulent IQ Data account that Experian and Trans Union were reporting. Upon information and belief, Experian and Trans Union continue to report the fraudulent IQ Data account, as belonging to Plaintiff.

27. IQ Data is liable to Plaintiff for violating § 1681s-2(b) of the FCRA by its acts and omissions, including but not limited to:

   a. failing to conduct reasonable investigations of Plaintiff's disputes of the fraudulent IQ Data account reporting on Plaintiff's credit reports with Experian and Trans Union;

   b. failing to review all relevant information provided to IQ Data by the Experian and Trans Union concerning Plaintiff's disputes; and

   c. failing to promptly modify, delete, or permanently block any and all disputed information about the fraudulent IQ Data account on Plaintiff's credit file with Experian and Trans Union that IQ Data could not affirmatively verify as accurate.

28. Similarly, Experian and Trans Union are liable to Plaintiff for violations of several provisions of § 1681i of the FCRA due to its acts and omissions, including, but not limited to, the following:

   a. failing to (i) conduct reasonable investigations of the fraudulent IQ Data account to determine whether the information Plaintiff disputed was accurate, and (ii) record the correct status of the fraudulent IQ Data account in violation of § 1681i(a)(1);

   b. failing to review and consider all relevant information communicated by Plaintiff concerning Plaintiff's disputes about the fraudulent IQ Data account, in violation of § 1681i(a)(4); and

   c. failing to promptly update the disputed fraudulent IQ Data account on Plaintiff's credit file despite the fact that Experian and Trans Union could not have affirmatively verified the fraudulent IQ Data account as accurate upon a lawful reinvestigation of Plaintiff's disputes, in violation of § 1681i(a)(5).

29. As a direct and proximate result of each Defendant's negligent and willful actions, conduct, and omissions, Plaintiff suffered actual damages, cognizable pursuant to the FCRA. Such damages include but are not necessarily limited to the following: impediments to Plaintiff's ability to seek credit, damage to Plaintiff's reputation for creditworthiness, emotional distress, embarrassment, aggravation, and frustration.[3]

30. Each Defendant's willful violations of the FCRA entitles Plaintiff to an award of punitive damages.

---

[3] Plaintiff may have also suffered direct credit harm due to Defendants' violations of the FCRA and NY FCRA. Plaintiff intends to inquire into the extent of direct credit harm she may have suffered through discovery from Defendants and third-parties.

9

### *Sezzle account*

31. As set forth herein, Defendants Sezzle, Equifax, and Experian denied Plaintiff the protections provided by the FCRA and the NY FCRA concerning the fraudulent Sezzle account, account number 146433**** (hereinafter referred to as the "Sezzle account").

32. In July 2025, Plaintiff sent dispute letters to Equifax and Experian informing the CRAs Equifax and Experian that they were reporting a fraudulent Sezzle account on Plaintiff's Equifax and Experian credit reports. Nevertheless, Equifax and Experian continued to report the fraudulent Sezzle account on Plaintiff's Equifax and Experian credit reports.

33. In August 2025, Plaintiff sent a second round of dispute letters to Equifax and Experian once again informing the CRA Equifax and Experian that they were reporting a fraudulent Sezzle account on Plaintiff's Equifax and Experian credit reports. Nevertheless, Equifax and Experian once again continued to report the fraudulent Sezzle account on Plaintiff's Equifax and Experian credit reports.

34. Upon information and belief, after receiving notice of Plaintiff's disputes from Equifax and Experian, and notwithstanding the fact that Sezzle *knew* that the fraudulent Sezzle account, it was reporting to Equifax and Experian did not belong to Plaintiff, Sezzle repeatedly verified the fraudulent Sezzle account to Equifax and Experian.

35. Despite Plaintiff's disputes, Equifax and Experian did not correct the fraudulent Sezzle account Equifax and Experian were reporting. Upon information and belief, Equifax and Experian continue to report the fraudulent Sezzle account, as belonging to the Plaintiff.

36. Sezzle is liable to Plaintiff for violating § 1681s-2(b) of the FCRA by its acts and omissions, including but not limited to:

    a.  failing to conduct reasonable investigations of Plaintiff's disputes of the fraudulent Sezzle account reporting on Plaintiff's credit reports with Equifax and Experian;

    b.  failing to review all relevant information provided to Sezzle by Equifax and Experian concerning Plaintiff's disputes; and

    c.  failing to promptly modify, delete, or permanently block any and all disputed information about the fraudulent Sezzle account on Plaintiff's credit file with Equifax and Experian that Sezzle could not affirmatively verify as accurate.

37. Similarly, Equifax and Experian are liable to Plaintiff for violations of several provisions of § 1681i of the FCRA due to its acts and omissions, including, but not limited to, the following:

    a.  failing to (i) conduct reasonable investigations of the fraudulent Sezzle account to determine whether the information Plaintiff disputed was accurate, and (ii) record the correct status of the fraudulent Sezzle account, in violation of § 1681i(a)(1);

    b.  failing to review and consider all relevant information communicated by Plaintiff concerning Plaintiff's disputes about the fraudulent Sezzle account in violation of § 1681i(a)(4); and

    c.  failing to promptly update the disputed Sezzle account tradeline on Plaintiff's credit file despite the fact that Equifax and Experian could not have affirmatively verified the fraudulent Sezzle account tradeline as accurate upon a lawful reinvestigation of Plaintiff's disputes, in violation of § 1681i(a)(5).

38. As a direct and proximate result of each Defendant's negligent and willful actions, conduct, and omissions, Plaintiff suffered actual damages, cognizable pursuant to the FCRA.

11

Such damages include but are not necessarily limited to the following: impediments to Plaintiff's ability to seek credit, damage to Plaintiff's reputation for creditworthiness, emotional distress, embarrassment, aggravation, and frustration.[4]

39. Each Defendant's willful violations of the FCRA entitles Plaintiff to an award of punitive damages.

### *Verizon Wireless account*

40. As set forth herein, Defendants Verizon Wireless, Equifax, Experian and Trans Union denied Plaintiff the protections provided by the FCRA and the NY FCRA concerning the fraudulent Verizon Wireless account, bearing account number ending in 589729**** (hereinafter referred to as the "Verizon Wireless account").

41. In May 2025, Plaintiff sent dispute letters to Equifax, Experian and Trans Union informing the CRA Defendants that CRA Defendants were reporting a fraudulent Verizon Wireless account on Plaintiff's Equifax, Experian and Trans Union credit reports. Nevertheless, Equifax, Experian and Trans Union continued to report the fraudulent Verizon Wireless account on the Plaintiff's Equifax, Experian and Trans Union credit reports.

42. In July 2025, Plaintiff sent a second round of dispute letters to Equifax, Experian, and Trans Union once again informing the CRA Defendants that CRA Defendants were reporting a fraudulent Verizon Wireless account on Plaintiff's Equifax, Experian, and Trans Union credit reports. Nevertheless, Equifax, Experian, and Trans Union once again continued to report the fraudulent Verizon Wireless account on Plaintiff's Equifax, Experian and Trans Union credit reports.

---

[4] Plaintiff may have also suffered direct credit harm due to Defendants' violations of the FCRA and NY FCRA. Plaintiff intends to inquire into the extent of direct credit harm she may have suffered through discovery from Defendants and third-parties.

43. Upon information and belief, after receiving notice of Plaintiff's disputes from Equifax, Experian, and Trans Union and notwithstanding the fact that Verizon Wireless *knew* that the fraudulent account it was reporting to the CRA Defendants did not belong to the Plaintiff, Verizon Wireless repeatedly verified the inaccurate information to Equifax, Experian, and Trans Union.

44. Verizon Wireless is liable to Plaintiff for violating § 1681s-2(b) of the FCRA by its acts and omissions, including but not limited to:

   a. failing to conduct reasonable investigations of Plaintiff's disputes regarding the fraudulent Verizon Wireless account reported on Plaintiff's credit reports with Equifax, Experian, and Trans Union.

   b. failing to review all relevant information provided to Verizon Wireless by the CRA Defendants concerning Plaintiff's disputes; and

   c. failing to promptly modify, delete, or permanently block any and all disputed information about the fraudulent Verizon Wireless account on Plaintiff's credit file with the CRA Defendants that Verizon Wireless could not affirmatively verify as accurate.

45. Similarly, Equifax, Experian, and Trans Union are liable to Plaintiff for violations of several provisions of § 1681i of the FCRA due to its acts and omissions, including, but not limited to, the following:

   a. failing to (i) conduct reasonable investigations of the fraudulent Verizon Wireless account to determine whether the information Plaintiff disputed was accurate, and (ii) record the correct status of the fraudulent Verizon Wireless account, in violation of § 1681i(a)(1);

13

   b.  failing to review and consider all relevant information communicated by Plaintiff concerning Plaintiff's disputes about the fraudulent Verizon Wireless account, in violation of § 1681i(a)(4); and

   c.  failing to promptly update the disputed fraudulent Verizon Wireless account tradeline on Plaintiff's credit file despite the fact that the CRA Defendants could not have affirmatively verified the fraudulent Verizon Wireless account as accurate upon a lawful reinvestigation of Plaintiff's disputes, in violation of § 1681i(a)(5).

46. As a direct and proximate result of each Defendant's negligent and willful actions, conduct, and omissions, Plaintiff suffered actual damages, cognizable pursuant to the FCRA. Such damages include but are not necessarily limited to the following: impediments to Plaintiff's ability to seek credit, damage to Plaintiff's reputation for creditworthiness, emotional distress, embarrassment, aggravation, and frustration.[5]

47. Each Defendant's willful violations of the FCRA entitles Plaintiff to an award of punitive damages.

### *Fingerhut/WebBank account*

48. As set forth herein, Defendants Fingerhut, WebBank, and Equifax denied Plaintiff the protections provided by the FCRA and the NY FCRA concerning the fraudulently opened Fingerhut/WebBank account number ending with digits *4875 (hereinafter referred to as the "Fingerhut/WebBank account").

49. In July 2025, Plaintiff sent a dispute letter to Equifax informing the CRA Equifax that it is reporting a fraudulent Fingerhut/WebBank account on Plaintiff's Equifax credit report.

---

[5] Plaintiff may have also suffered direct credit harm due to Defendants' violations of the FCRA and NY FCRA. Plaintiff intends to inquire into the extent of direct credit harm she may have suffered through discovery from Defendants and third-parties.

Nevertheless, Equifax continued to report the fraudulent Fingerhut/WebBank account on Plaintiff's Equifax credit report.

50. In August 2025, Plaintiff sent a second round of dispute letter to Equifax once again informing the CRA Equifax that they were reporting a fraudulent Fingerhut/WebBank account on Plaintiff's Equifax credit report. Nevertheless, Equifax once again continued to report the fraudulent Fingerhut/WebBank account on Plaintiff's Equifax credit report.

51. Upon information and belief, after receiving notice of Plaintiff's disputes from Equifax and notwithstanding the fact that Fingerhut and WebBank *knew* that the fraudulent Fingerhut/WebBank account, it was reporting to Equifax did not belong to Plaintiff, Fingerhut and WebBank repeatedly verified the fraudulent Fingerhut/WebBank account to Equifax.

52. Fingerhut and WebBank are liable to Plaintiff for violating § 1681s-2(b) of the FCRA by its acts and omissions, including but not limited to:

   a. failing to conduct reasonable investigations of Plaintiff's disputes of the fraudulent Fingerhut/WebBank account reporting on Plaintiff's credit reports with Equifax;

   b. failing to review all relevant information provided to Fingerhut and WebBank by Equifax concerning Plaintiff's disputes; and

   c. failing to promptly modify, delete, or permanently block any and all disputed information about the fraudulent Fingerhut/WebBank account on Plaintiff's credit file with Equifax that Fingerhut and WebBank could not affirmatively verify as accurate.

53. Similarly, Equifax is liable to Plaintiff for violations of several provisions of § 1681i of the FCRA due to its acts and omissions, including, but not limited to, the following:

a. failing to (i) conduct reasonable investigations of the fraudulent Fingerhut/WebBank account to determine whether the information Plaintiff disputed was accurate, and (ii) record the correct status of the fraudulent Fingerhut/WebBank account, in violation of § 1681i(a)(1);

b. failing to review and consider all relevant information communicated by Plaintiff concerning Plaintiff's disputes about the fraudulent Fingerhut/WebBank account in violation of § 1681i(a)(4); and

c. failing to promptly update the disputed Fingerhut/WebBank account tradeline on Plaintiff's credit file despite the fact that Equifax could not have affirmatively verified the fraudulent Fingerhut/WebBank account tradeline as accurate upon a lawful reinvestigation of Plaintiff's disputes, in violation of § 1681i(a)(5).

54. As a direct and proximate result of each Defendant's negligent and willful actions, conduct, and omissions, Plaintiff suffered actual damages, cognizable pursuant to the FCRA. Such damages include but are not necessarily limited to the following: impediments to Plaintiff's ability to seek credit, damage to Plaintiff's reputation for creditworthiness, emotional distress, embarrassment, aggravation, and frustration.[6]

55. Each Defendant's willful violations of the FCRA entitles Plaintiff to an award of punitive damages.

### *Self Financial accounts*

56. As set forth herein, Defendants Self Financial, Equifax, and Trans Union denied Plaintiff the protections provided by the FCRA and the NY FCRA concerning fraudulently reported Self

---

[6] Plaintiff may have also suffered direct credit harm due to Defendants' violations of the FCRA and NY FCRA. Plaintiff intends to inquire into the extent of direct credit harm she may have suffered through discovery from Defendants and third-parties.

Financial tradelines, both bearing account number ending in digits *1384, (the **"Self Financial accounts"**).

57. In August 2025, Plaintiff sent a dispute letter to Equifax and Trans Union informing the CRA Defendants that they were reporting fraudulent and inaccurate Self Financial accounts on Plaintiff's Equifax and Trans Union credit reports. Nevertheless, Equifax and Trans Union continued to report the fraudulent Self Financial accounts.

58. Upon information and belief, after receiving notice of Plaintiff's dispute from Equifax and Trans Union, and notwithstanding the fact that Self Financial knew that the fraudulent Self Financial accounts it was reporting to Equifax and Trans Union did not belong to Plaintiff, Self Financial repeatedly verified the inaccurate information to Equifax and Trans Union.

59. Self Financial is liable to Plaintiff for violating § 1681s-2(b) of the FCRA by its acts and omissions, including but not limited to:

    a. failing to conduct reasonable investigations of Plaintiff's disputes of the fraudulent Self Financial tradelines reporting on Plaintiff's credit reports with Equifax and Trans Union;

    b. failing to review all relevant information provided to Self Financial by Equifax and Trans Union concerning Plaintiff's disputes; and

    c. failing to promptly modify, delete, or permanently block any and all disputed information about the fraudulent Self Financial accounts on Plaintiff's credit file with Equifax and Trans Union that Self Financial could not affirmatively verify as accurate.

60. Similarly, Equifax and Trans Union are liable to Plaintiff for violations of several provisions of § 1681i of the FCRA due to its acts and omissions, including, but not limited to, the following:

    a. failing to (i) conduct reasonable investigations of the fraudulent Self Financial accounts to determine whether the information Plaintiff disputed was accurate, and (ii) record the correct status of the fraudulent Self Financial accounts, in violation of § 1681i(a)(1);

    b. failing to review and consider all relevant information communicated by Plaintiff concerning Plaintiff's disputes about the fraudulent Self Financial accounts in violation of § 1681i(a)(4); and

    c. failing to promptly update the disputed Self Financial accounts tradeline on Plaintiff's credit file despite the fact that Equifax and Trans Union could not have affirmatively verified the fraudulent Self Financial accounts tradeline as accurate upon a lawful reinvestigation of Plaintiff's disputes, in violation of § 1681i(a)(5).

61. As a direct and proximate result of each Defendant's negligent and willful actions, conduct, and omissions, Plaintiff suffered actual damages, cognizable pursuant to the FCRA. Such damages include but are not necessarily limited to the following: impediments to Plaintiff's ability to seek credit, damage to Plaintiff's reputation for creditworthiness, emotional distress, embarrassment, aggravation, and frustration.[7]

62. Each Defendant's willful violations of the FCRA entitles Plaintiff to an award of punitive damages.

---

[7] Plaintiff may have also suffered direct credit harm due to Defendants' violations of the FCRA and NY FCRA. Plaintiff intends to inquire into the extent of direct credit harm she may have suffered through discovery from Defendants and third-parties.

18

## PARTIES

63. Plaintiff is an individual and "consumer" within the meaning of the FCRA (15 U.S.C. § 1681a(c)) and NY FCRA (NY GBL § 380-a(b)). Plaintiff resides at 275 W 140th Street, 3B, New York, NY 10030.

64. MCM is a company engaged in the business of collecting debts with a principal place of business located at 2365 Northside Dr #300, San Diego, CA 92108.

65. MCM is a "furnisher of information" within the meaning of the FCRA (15 U.S.C. §1681s-2 et seq.).

66. LVNV is a company engaged in the business of collecting debts with a principal place of business located at 1703 Laurel Street, Columbia, SC 29223.

67. LVNV is a "furnisher of information" within the meaning of the FCRA (15 U.S.C. §1681s-2 et seq.).

68. Resurgent is a company engaged in the business of collecting debts with a principal place of business located at 1703 Laurel Street, Columbia, SC 29201.

69. Resurgent is a "furnisher of information" within the meaning of the FCRA (15 U.S.C. §1681s-2 et seq.).

70. IQ Data is a company engaged in the business of collecting debts with a principal place of business located at 1010 SE Everett Mall Way, Ste 100, Everett WA 98208.

71. IQ Data is a "furnisher of information" within the meaning of the FCRA (15 U.S.C. §1681s-2 et seq.).

72. Sezzle is a company that furnishes consumer credit information to consumer reporting agencies. It has a principal place of business located at 700 Nicollet Mall, Ste 640, Minneapolis, MN 55402.

Case 1:26-cv-00647-GHW     Document 3-2     Filed 01/26/26     Page 21 of 68

73. Sezzle is a "furnisher of information" within the meaning of the FCRA (15 U.S.C. §1681s-2 et seq.).

74. Verizon is a company that furnishes consumer credit information to consumer reporting agencies. It has a principal place of business located at 1095 Avenue of the Americas, New York, New York 10036.

75. Verizon is a "furnisher of information" within the meaning of the FCRA (15 U.S.C. §1681s-2 et seq.).

76. Fingerhut is a company that furnishes consumer credit information to consumer reporting agencies. It has a principal place of business located at 6250 Ridgewood Rd, St Cloud, MN 56303.

77. Fingerhut is a "furnisher of information" within the meaning of the FCRA 15 U.S.C. §1681s-2 et seq.).

78. WebBank is a bank that furnishes consumer credit information to consumer reporting agencies. It has a principal place of business located at 215 South State Street, Ste. 1000, Salt Lake City, Utah 84111.

79. WebBank is a "furnisher of information" within the meaning of the FCRA (15 U.S.C. § 1681s-2 et seq.)

80. Self Financial is a Texas-based credit builder that furnishes consumer credit information to consumer reporting agencies. It has a principal place of business at 901 E. 6th Street, Suite 400, Austin, Texas 78702.

81. Self Financial is a "furnisher of information" within the meaning of the FCRA (15 U.S.C. § 1681s-2 et seq.)

82. Equifax, Experian, and Trans Union are consumer reporting agencies as defined by the FCRA (15 U.S.C. § 1681a(f)) and the NY FCRA (G.B.L. § 380-a(e)).

## **FACTUAL ALLEGATIONS**

### *MCM account*

83. On or around January 2025, Plaintiff ran her Equifax, Experian and Trans Union credit reports and noticed that Defendant MCM was reporting a fraudulent MCM account on Plaintiff's Equifax, Experian and Trans Union credit reports.

84. However, this fraudulent MCM account is inaccurate because Plaintiff was the victim of identity theft. An unknown individual(s) fraudulently opened the fraudulent MCM account at a date unknown to Plaintiff. This unknown individual(s) made fraudulent transactions totaling approximately $645 on the fraudulent MCM account.

85. As a result, the Plaintiff completed and filed an FTC Identity Theft Report on March 13, 2025. Plaintiff also attempted to file a police report, on April 17, 2025, at 7th Precinct located at 19 ½ Pitt St, New York, NY, 10002 with the New York Police Department, however, the concerned officer refused to register her complaint and thus was constrained to file an affidavit of attempted police report filing to document her efforts to dispute and remove the fraudulent information from her credit reports.

86. Notably, Plaintiff also contacted MCM to request that MCM permanently block and cease reporting the fraudulent account to the CRA Defendants. Specifically, Plaintiff directly contacted MCM, via a dispute letter, on or around August 2025.

87. However, MCM ignored Plaintiff – allowing the fraud to continue and progress.

88. Following Plaintiff's disputes, Defendants MCM, Equifax, Experian, and Trans Union failed to perform FCRA-required reasonable investigations. As such, Defendant MCM unlawfully

verified the fraudulent MCM account as belonging to Plaintiff and the CRA Defendants, in turn, continued to report an incorrect, and therefore unverifiable, fraudulent MCM account tradeline on (a) Plaintiff's Equifax, Experian, and Trans Union credit reports and, upon information and belief, (b) consumer reports about Plaintiff that the CRA Defendants prepared and distributed to third-parties.

89. MCM, Equifax, Experian, and Trans Union included the inaccurate balance, associated with the fraudulent MCM account, on consumer reports published to third parties. These publications defamed Plaintiff, thereby (a) giving creditors and/or potential creditors the false impression that Plaintiff was a poor credit risk, (b) impugning Plaintiff's reputation and character, and (c) causing Plaintiff to suffer substantial emotional distress. As such, Plaintiff has suffered concrete and particularized injuries pursuant to the FCRA such that Plaintiff has Article III standing to bring claims under the FCRA.

### Plaintiff's Disputes

### Equifax Disputes and Dispute Results

90. By letter dated May 1, 2025, Plaintiff wrote Defendant Equifax to dispute the fraudulent MCM account that Defendant Equifax was reporting on Plaintiff's Equifax credit report. Specifically, Plaintiff informed Equifax of the following: "I am writing to dispute certain information in my credit report. I recently became aware that I have been a victim of identity theft. These accounts do not belong to me and is causing grave harm to my credit profile." Plaintiff also requested that Equifax remove the fraudulent MCM account from Plaintiff's credit report. Plaintiff attached her FTC Identity Theft Report with her dispute letter. Plaintiff's May 1, 2025 dispute letter was sent via certified mail.

91. Plaintiff did not receive a response from Equifax. However, Equifax continued to report the fraudulent MCM account on Plaintiff's Equifax credit report.

### *Experian Disputes and Dispute Results*

92. By letter dated May 14, 2025, Plaintiff wrote Defendant Experian to dispute the fraudulent MCM account that Defendant Experian was reporting on Plaintiff's Experian credit report. Specifically, Plaintiff informed Experian of the following: "I am writing to dispute certain information in my credit report. I recently became aware that I have been a victim of identity theft. These accounts do not belong to me and is causing grave harm to my credit profile." Plaintiff also requested that Experian remove the fraudulent MCM account from Plaintiff's credit report. Plaintiff attached her FTC Identity Theft Report with her dispute letter. Plaintiff's May 14, 2025 dispute letter was sent via certified mail.

93. Plaintiff did not receive a response from Experian. However, Experian continued to report the fraudulent MCM account on Plaintiff's Experian credit report.

94. By letter dated June 28, 2025, Plaintiff once again wrote Defendant Experian to dispute the fraudulent MCM account that it was reporting on Plaintiff's Experian credit report. Specifically, Plaintiff informed Experian of the following: "I am writing to dispute certain information in my credit report. I recently became aware that I have been a victim of identity theft. These accounts do not belong to me and is causing grave harm to my credit profile." Plaintiff also requested that Experian remove the fraudulent MCM account from Plaintiff's credit report. Plaintiff attached her FTC Identity Theft Report with her dispute letter. Plaintiff's June 28, 2025 dispute letter was sent via certified mail.

95. Plaintiff did not receive a response from Experian. However, Experian continued to report the fraudulent MCM account on Plaintiff's Experian credit report.

*Trans Union Disputes and Dispute Results*

96. By letter dated May 14, 2025, Plaintiff wrote Defendant Trans Union to dispute the fraudulent MCM account that Defendant Trans Union was reporting on Plaintiff's Trans Union credit report. Specifically, Plaintiff informed Trans Union of the following: "I am writing to dispute certain information in my credit report. I recently became aware that I have been a victim of identity theft. These accounts do not belong to me and is causing grave harm to my credit profile." Plaintiff also requested that Trans Union remove the fraudulent MCM account from Plaintiff's credit report. Plaintiff attached her FTC Identity Theft Report with her dispute letter. Plaintiff's May 14, 2025 dispute letter was sent via certified mail.

97. Plaintiff did not receive a response from Trans Union. However, Trans Union continued to report the fraudulent MCM account on Plaintiff's Trans Union credit report.

*Damages*

98. Because of Defendants MCM's, Equifax's, Experian's and Trans Union's misconduct, Plaintiff suffered actual damages cognizable pursuant to the FCRA and NY FCRA.

99. Such damages include but are not necessarily limited to the following: impediments to Plaintiff's ability to seek credit, damage to Plaintiff's reputation for creditworthiness, emotional distress, embarrassment, aggravation, and frustration.

100.  Moreover, Plaintiff will explore in discovery the extent to which the inaccurate reporting caused her credit harm in the form of credit denials and/or other adverse actions with respect to existing credit.

101.  In addition, the inaccurate MCM account tradeline reported by Equifax, Experian and Trans Union has cost Plaintiff time and effort and expense in pursuit of corrected credit reports.

102.  MCM's, Equifax's Experian's and Trans Union's publication of inaccurate information about Plaintiff caused Plaintiff to suffer damages cognizable pursuant to the FCRA and NY FCRA, including but not necessarily limited to the following:

   a.  Plaintiff suffered substantial emotional distress. Plaintiff's emotional distress has manifested itself through a variety of symptoms, including stress, anxiety, headaches, difficulty sleeping, frustration, humiliation, apprehension about applying for credit, depression, and instances of crying.

   b.  Plaintiff was defamed by MCM, Equifax, Experian and Trans Union all of which published false information about Plaintiff that damaged Plaintiff's reputation for creditworthiness and impugned Plaintiff's reputation. Such defamation further contributed to, among other things, Plaintiff's ongoing emotional distress.

### *LVNV/Resurgent account*

103.  On or around August 2025, Plaintiff ran her Equifax and Experian credit reports and noticed that Equifax and Experian reinserted a previously deleted fraudulent LVNV/Resurgent account on Plaintiff's Equifax and Experian credit reports.

104.  However, the fraudulent LVNV/Resurgent account is inaccurate because Plaintiff was the victim of identity theft. An unknown individual(s) fraudulently opened the fraudulent LVNV/Resurgent account at a date unknown to Plaintiff. This unknown individual(s) made fraudulent transactions, totaling approximately $504, on the fraudulent LVNV/Resurgent account.

105.  Furthermore, Plaintiff also contacted LVNV and Resurgent to request that LVNV and Resurgent permanently block and cease reporting the fraudulent account to the CRA Defendants.

25

106.  However, LVNV and Resurgent ignored Plaintiff – allowing the fraud to continue and progress.

107.  Following Plaintiff's disputes, Defendants LVNV, Resurgent, Equifax, and Experian failed to perform FCRA-required reasonable investigations. As such, Defendants LVNV and Resurgent unlawfully verified the fraudulent LVNV/Resurgent account as belonging to the Plaintiff and the CRA Defendants, in turn, continued to report an incorrect, and therefore unverifiable, fraudulent LVNV/Resurgent account on (a) Plaintiff's credit reports and, upon information and belief, (b) consumer reports about Plaintiff that the CRA Defendants prepared and distributed to third-parties.

108.  LVNV, Resurgent, Equifax, and Experian included the fraudulent balance, associated with the fraudulent LVNV/Resurgent account, on consumer reports published to third parties. These publications defamed Plaintiff, thereby (a) giving creditors and/or potential creditors the false impression that Plaintiff was a poor credit risk, (b) impugning Plaintiff's reputation and character, and (c) causing Plaintiff to suffer substantial emotional distress. As such, Plaintiff has suffered concrete and particularized injuries pursuant to the FCRA such that Plaintiff has Article III standing to bring claims under the FCRA.

### Plaintiff's Disputes

### Equifax Disputes and Dispute Results

109.  By letter dated August 2025, Plaintiff wrote Defendant Equifax to dispute the illegal reinsertion of the fraudulent LVNV/Resurgent account that Defendant Equifax was reporting on Plaintiff's Equifax credit report. Specifically, Plaintiff informed Equifax of the following: "This account was previously disputed and removed, yet it has re-appeared on my credit report without Advance written notice to me 15 U.S.C. § 1681i(a)(5)(B)(ii), Certification of

accuracy from the furnisher under § 1681i(a)(5)(B)(i), or A clear explanation justifying the reinsertion." Plaintiff also requested that Equifax remove the fraudulent LVNV/Resurgent account from Plaintiff's credit report.

110. Plaintiff did not receive a response from Equifax. However, Equifax continued to report the fraudulent LVNV/Resurgent account on Plaintiff's Equifax credit report.

111. Equifax did not notify Plaintiff about any reinsertion, nor did it certify the accuracy of the reinserted data as required under 15 U.S.C. § 1681i(a)(5)(C). Equifax's conduct demonstrates its failures to maintain reasonable procedures to ensure the accuracy and completeness of information, in violation of 15 U.S.C. §§ 1681i and 1681e(b) and further constitutes a failure to comply with statutory reinsertion procedures.

*Experian Disputes and Dispute Results*

112. By letter dated August 2025, Plaintiff wrote Defendant Experian to dispute the illegal reinsertion of the fraudulent LVNV/Resurgent account that Defendant Experian was reporting on Plaintiff's Experian credit report. Specifically, Plaintiff informed Experian of the following: "The following accounts do not belong to me. I have never opened, used, or authorized them. They are identity theft-related, and you have already received my valid identity theft affidavit, and proof of identity in prior submissions." Plaintiff also requested that Experian remove the fraudulent LVNV/Resurgent account from Plaintiff's credit report.

113. Plaintiff did not receive a response from Experian. However, Experian continued to report the fraudulent LVNV/Resurgent account on Plaintiff's Experian credit report.

114. Experian did not notify Plaintiff about any reinsertion, nor did it certify the accuracy of the reinserted data as required under 15 U.S.C. § 1681i(a)(5)(C). Experian's conduct demonstrates its failures to maintain reasonable procedures to ensure the accuracy and

completeness of information, in violation of 15 U.S.C. §§ 1681i and 1681e(b) and further constitutes a failure to comply with statutory reinsertion procedures.

*Damages*

115. Because of Defendants LVNV, Resurgent, Equifax's, and Experian's misconduct, Plaintiff suffered actual damages cognizable pursuant to the FCRA and NY FCRA.

116. Such damages include but are not necessarily limited to the following: impediments to Plaintiff's ability to seek credit, damage to Plaintiff's reputation for creditworthiness, emotional distress, embarrassment, aggravation, and frustration.

117. Moreover, Plaintiff will explore in discovery the extent to which the inaccurate reporting caused her credit harm in the form of credit denials and/or other adverse actions with respect to existing credit.

118. In addition, the inaccurate LVNV/Resurgent tradeline reported by Equifax and Experian has cost, and continues to cost, Plaintiff time and effort and expense in pursuit of corrected credit reports.

119. LVNV's, Resurgent's, Equifax's, and Experian's publication of inaccurate information about Plaintiff caused Plaintiff to suffer damages cognizable pursuant to the FCRA and NY FCRA, including but not necessarily limited to the following:

    a. Plaintiff suffered substantial emotional distress. Plaintiff's emotional distress has manifested itself through a variety of symptoms, including stress, anxiety, headaches, difficulty sleeping, frustration, humiliation, apprehension about applying for credit, depression, and instances of crying.

    b. Plaintiff was defamed by LVNV, Resurgent, Equifax, and Experian all of which published false information about Plaintiff that damaged Plaintiff's reputation for

Case 1:26-cv-00647-GHW    Document 3-2    Filed 01/26/26    Page 30 of 68

creditworthiness and impugned Plaintiff's reputation. Such defamation further contributed to, among other things, Plaintiff's ongoing emotional distress.

### *IQ Data account*

120.  On or around January 2025, Plaintiff ran her Experian and Trans Union credit reports and noticed that Defendant IQ Data was reporting a fraudulent IQ Data International account on Plaintiff's Experian and Trans Union credit reports.

121.  However, the fraudulent IQ Data International account, is inaccurate because Plaintiff was the victim of identity theft. An unknown individual(s) fraudulently opened the fraudulent IQ Data International account at a date unknown to the Plaintiff. This unknown individual(s) made fraudulent transactions totaling approximately $2,878 on the fraudulent IQ Data International account.

122.  As a result, the Plaintiff completed and filed an FTC Identity Theft Report on March 13, 2025. Plaintiff also attempted to file a police report, on April 17, 2025, at 7th Precinct located at 19 ½ Pitt St, New York, NY, 10002 with the New York Police Department, however, the concerned officer refused to register her complaint and thus was constrained to file an affidavit of attempted police report filing to document her efforts to dispute and remove the fraudulent information from her credit reports.

123.  Following Plaintiff's disputes, Defendants IQ Data, Experian, and Trans Union failed to perform FCRA-required reasonable investigations. As such, Defendant IQ Data unlawfully verified the fraudulent IQ Data account as belonging to Plaintiff and the CRA Defendants, in turn, continued to report an incorrect, and therefore unverifiable, fraudulent IQ Data account on (a) Plaintiff's credit reports and, upon information and belief, (b) consumer reports about Plaintiff that the CRA Defendants prepared and distributed to third-parties.

124. IQ Data, Experian, and Trans Union included the inaccurate balance, associated with the fraudulent IQ Data account, on consumer reports published to third parties. These publications defamed Plaintiff, thereby (a) giving creditors and/or potential creditors the false impression that Plaintiff was a poor credit risk, (b) impugning Plaintiff's reputation and character, and (c) causing Plaintiff to suffer substantial emotional distress. As such, Plaintiff has suffered concrete and particularized injuries pursuant to the FCRA such that Plaintiff has Article III standing to bring claims under the FCRA.

### Plaintiff's Disputes

### Experian Disputes and Dispute Results

125. By letter dated May 14, 2025, Plaintiff wrote Defendant Experian to dispute the fraudulent IQ Data account that Defendant Experian was reporting on Plaintiff's Experian credit report. Specifically, Plaintiff informed Experian of the following: "I am writing to dispute certain information in my credit report. I recently became aware that I have been a victim of identity theft. These accounts do not belong to me and are causing grave harm to my credit profile." Plaintiff also requested that Experian remove the fraudulent IQ Data account from Plaintiff's credit report. Plaintiff attached her FTC Identity Theft Report with her dispute letter. Plaintiff's May 14, 2025 dispute letter was sent via certified mail.

126. Plaintiff did not receive a response from Experian. However, Experian continued to report the fraudulent IQ Data account on Plaintiff's Experian credit report.

127. By letter dated June 28, 2025, Plaintiff once again wrote Defendant Experian to dispute the fraudulent IQ Data account that it was reporting on Plaintiff's Experian credit report. Specifically, Plaintiff informed Experian of the following: "I am writing to dispute certain information in my credit report. I recently became aware that I have been a victim of identity

30

theft. These accounts do not belong to me and are causing grave harm to my credit profile."
Plaintiff also requested that Experian remove the fraudulent IQ Data account from Plaintiff's
credit report. Plaintiff attached her FTC Identity Theft Report with her dispute letter.
Plaintiff's June 28, 2025 dispute letter was sent via certified mail.

128. Plaintiff once again did not receive a response from Experian. However, Experian once again
continued to report the fraudulent IQ Data account on Plaintiff's Experian credit report.

### *Trans Union Disputes and Dispute Results*

129. By letter dated May 14, 2025, Plaintiff wrote Defendant Trans Union to dispute the fraudulent
IQ Data account that Defendant Trans Union was reporting on Plaintiff's Trans Union credit
report. Specifically, Plaintiff informed Trans Union of the following: "I am writing to dispute
certain information in my credit report. I recently became aware that I have been a victim of
identity theft. These accounts do not belong to me and are causing grave harm to my credit
profile." Plaintiff also requested that Trans Union remove the fraudulent IQ Data account
from Plaintiff's credit report. Plaintiff attached her FTC Identity Theft Report with her
dispute letter. Plaintiff's May 14, 2025 dispute letter was sent via certified mail.

130. Plaintiff did not receive a response from Trans Union. However, Trans Union continued to
report the fraudulent IQ Data account on Plaintiff's Trans Union credit report.

131. By letter dated June 28, 2025 Plaintiff once again wrote Defendant Trans Union to dispute
the fraudulent IQ Data account that it was reporting on Plaintiff's Trans Union credit report.
Specifically, Plaintiff informed Trans Union of the following: "I am writing to dispute certain
information in my credit report. I recently became aware that I have been a victim of identity
theft. These accounts do not belong to me and are causing grave harm to my credit profile."
Plaintiff also requested that Trans Union remove the fraudulent IQ Data account from

Plaintiff's credit report. Plaintiff attached her FTC Identity Theft Report with her dispute letter. Plaintiff's June 28, 2025 dispute letter was sent via certified mail.

132. Plaintiff once again did not receive a response from Trans Union. However, Trans Union once again continued to report the fraudulent IQ Data account on Plaintiff's Trans Union credit report.

### *Damages*

133. Because of Defendants IQ Data, Experian's, and Trans Union's misconduct, Plaintiff suffered actual damages cognizable pursuant to the FCRA and NY FCRA.

134. Such damages include but are not necessarily limited to the following: impediments to Plaintiff's ability to seek credit, damage to Plaintiff's reputation for creditworthiness, emotional distress, embarrassment, aggravation, and frustration.

135. Moreover, Plaintiff will explore in discovery the extent to which the inaccurate reporting caused her credit harm in the form of credit denials and/or other adverse actions with respect to existing credit.

136. In addition, the inaccurate IQ Data account tradeline reported by Experian and Trans Union has cost Plaintiff time and effort and expense in pursuit of corrected credit reports.

137. IQ Data's, Experian's, and Trans Union's publication of inaccurate information about Plaintiff caused Plaintiff to suffer damages cognizable pursuant to the FCRA and NY FCRA, including but not necessarily limited to the following:

   a. Plaintiff suffered substantial emotional distress. Plaintiff's emotional distress has manifested itself through a variety of symptoms, including stress, anxiety, headaches, difficulty sleeping, frustration, humiliation, apprehension about applying for credit, depression, and instances of crying.

   b. Plaintiff was defamed by IQ Data, Experian, and Trans Union all of which published false information about Plaintiff that damaged Plaintiff's reputation for creditworthiness and impugned Plaintiff's reputation. Such defamation further contributed to, among other things, Plaintiff's ongoing emotional distress.

### *Sezzle account*

138. On or around June 2025, Plaintiff ran her Equifax and Experian credit reports and noticed that Equifax and Experian were reporting a fraudulent Sezzle account on Plaintiff's Equifax and Experian credit reports.

139. However, this fraudulent Sezzle account is inaccurate because Plaintiff was the victim of identity theft. An unknown individual(s) fraudulently opened the fraudulent Sezzle account at a date unknown to Plaintiff. This unknown individual(s) made fraudulent transactions totaling approximately $56 on the fraudulent Sezzle account.

140. Following Plaintiff's disputes, Defendants Sezzle, Equifax, and Experian failed to perform FCRA-required reasonable investigations. As such, the CRA Defendants unlawfully verified the fraudulent Sezzle account as accurate and the CRA Defendants, in turn, continued to report an incorrect, and therefore unverifiable, fraudulent Sezzle account on (a) Plaintiff's credit reports and, upon information and belief, (b) consumer reports about Plaintiff that the CRA Defendants prepared and distributed to third-parties.

141. Sezzle, Equifax, and Experian included the fraudulent balance, associated with the fraudulent Sezzle account, on consumer reports published to third parties. These publications defamed Plaintiff, thereby (a) giving creditors and/or potential creditors the false impression that Plaintiff was a poor credit risk, (b) impugning Plaintiff's reputation and character, and (c) causing Plaintiff to suffer substantial emotional distress. As such, Plaintiff has suffered

concrete and particularized injuries pursuant to the FCRA such that Plaintiff has Article III standing to bring claims under the FCRA.

### Plaintiff's Disputes

### Equifax Disputes and Dispute Results

142. By letter dated July 1, 2025 Plaintiff wrote Defendant Equifax to dispute the fraudulent Sezzle account that it was reporting on Plaintiff's Equifax credit report. Specifically, Plaintiff informed Sezzle of the following: "I am writing to dispute certain information in my credit report. I recently became aware that I have been a victim of identity theft. These accounts do not belong to me and are causing grave harm to my credit profile." Plaintiff also requested that Equifax remove the fraudulent Sezzle account from Plaintiff's credit report. Plaintiff's July 1, 2025 dispute letter was sent via certified mail.

143. Plaintiff did not receive a response from Equifax. However, Equifax continued to report the fraudulent Sezzle account on Plaintiff's Equifax credit report.

144. By letter dated August 2025, Plaintiff once again wrote Defendant Equifax to dispute the fraudulent Sezzle account that it was reporting on Plaintiff's Equifax credit report. Specifically, Plaintiff informed Sezzle of the following: "The following accounts continue to harm my credit despite previous disputes and documentation showing they were opened without my authorization." Plaintiff also requested that Equifax remove the fraudulent Sezzle account from Plaintiff's credit report. Plaintiff's August 2025 dispute letter was sent via certified mail.

145. Plaintiff once again did not receive a response from Equifax. However, Equifax once again continued to report the fraudulent Sezzle account on Plaintiff's Equifax credit report.

Case 1:26-cv-00647-GHW    Document 3-2    Filed 01/26/26    Page 36 of 68

*Experian Disputes and Dispute Results*

146. By letter dated June 28, 2025 Plaintiff wrote Defendant Experian to dispute the fraudulent Sezzle account that it was reporting on Plaintiff's Experian credit report. Specifically, Plaintiff informed Experian of the following: "I am writing to dispute certain information in my credit report. I recently became aware that I have been a victim of identity theft. These accounts do not belong to me and are causing grave harm to my credit profile." Plaintiff also requested that Trans Union remove the fraudulent Sezzle account from Plaintiff's credit report. Plaintiff attached her FTC Identity Theft Report with her dispute letter. Plaintiff's June 28, 2025 dispute letter was sent via certified mail.

147. Plaintiff did not receive a response from Experian. However, Experian continued to report the fraudulent Sezzle account on Plaintiff's Experian credit report.

148. By letter dated August 2025, Plaintiff once again wrote Defendant Experian to dispute the fraudulent Sezzle account that it was reporting on Plaintiff's Experian credit report. Specifically, Plaintiff informed Experian of the following: "The following accounts do not belong to me. I have never opened, used, or authorized them. They are identity theft-related, and you have already received my valid identity theft affidavit, and proof of identity in prior submissions." Plaintiff also requested that Experian remove the fraudulent Sezzle account from Plaintiff's credit report. Plaintiff attached her FTC Identity Theft Report with her dispute letter. Plaintiff's August 2025 dispute letter was sent via certified mail.

149. Plaintiff once again did not receive a response from Experian. However, Experian once again continued to report the fraudulent Sezzle account on Plaintiff's Experian credit report.

*Damages*

150. Because of Defendants Sezzle's, Equifax's, and Experian's misconduct, Plaintiff suffered actual damages cognizable pursuant to the FCRA and NY FCRA.

151. Such damages include but are not necessarily limited to the following: impediments to Plaintiff's ability to seek credit, damage to Plaintiff's reputation for creditworthiness, emotional distress, embarrassment, aggravation, and frustration.

152. Moreover, Plaintiff will explore in discovery the extent to which the inaccurate reporting caused her credit harm in the form of credit denials and/or other adverse actions with respect to existing credit.

153. In addition, the inaccurate Sezzle account tradeline reported by Equifax and Experian has cost, and continues to cost, Plaintiff time and effort and expense in pursuit of corrected credit reports.

154. Sezzle's, Equifax's, and Experian's publication of inaccurate information about Plaintiff caused Plaintiff to suffer damages cognizable pursuant to the FCRA and NY FCRA, including but not necessarily limited to the following:

    a. Plaintiff suffered substantial emotional distress. Plaintiff's emotional distress has manifested itself through a variety of symptoms, including stress, anxiety, headaches, difficulty sleeping, frustration, humiliation, apprehension about applying for credit, depression, and instances of crying.

    b. Plaintiff was defamed by Sezzle, Equifax, and Experian all of which published false information about Plaintiff that damaged Plaintiff's reputation for creditworthiness and impugned Plaintiff's reputation. Such defamation further contributed to, among other things, Plaintiff's ongoing emotional distress.

36

Case 1:26-cv-00647-GHW    Document 3-2    Filed 01/26/26    Page 38 of 68

*Verizon Wireless account*

155.  On or around January 2025, Plaintiff ran her Equifax, Experian and Trans Union credit reports and noticed that Defendant Verizon Wireless was reporting a fraudulent Verizon Wireless account on Plaintiff's Equifax, Experian, and Trans Union credit reports.

156.  However, this fraudulent Verizon Wireless account is inaccurate because Plaintiff was the victim of identity theft. An unknown individual(s) fraudulently opened the fraudulent Verizon Wireless account at a date unknown to Plaintiff. This unknown individual(s) made fraudulent transactions totaling approximately $2,349 on the fraudulent Verizon Wireless account.

157.  As a result, the Plaintiff completed and filed an FTC Identity Theft Report on March 13, 2025. Plaintiff also attempted to file a police report, on April 17, 2025, at 7th Precinct located at 19 ½ Pitt St, New York, NY, 10002 with the New York Police Department, however, the concerned officer refused to register her complaint and thus was constrained to file an affidavit of attempted police report filing to document her efforts to dispute and remove the fraudulent information from her credit reports.

158.  Following Plaintiff's disputes, Defendants Verizon Wireless, Equifax, Experian, and Trans Union failed to perform FCRA-required reasonable investigations. As such, Defendant Verizon Wireless unlawfully verified the fraudulent Verizon Wireless account as belonging to Plaintiff and the CRA Defendants, in turn, continued to report an incorrect, and therefore unverifiable, fraudulent Verizon Wireless account tradeline on (a) Plaintiff's Equifax, Experian, and Trans Union credit reports and, upon information and belief, (b) consumer reports about Plaintiff that the CRA Defendants prepared and distributed to third-parties.

159. Verizon Wireless, Equifax, Experian, and Trans Union included the inaccurate balance, associated with the fraudulent Verizon Wireless account, on consumer reports published to third parties. These publications defamed Plaintiff, thereby (a) giving creditors and/or potential creditors the false impression that Plaintiff was a poor credit risk, (b) impugning Plaintiff's reputation and character, and (c) causing Plaintiff to suffer substantial emotional distress. As such, Plaintiff has suffered concrete and particularized injuries pursuant to the FCRA such that Plaintiff has Article III standing to bring claims under the FCRA.

***Plaintiff's Disputes***

***Equifax Disputes and Dispute Results***

160. By letter dated May 1, 2025, Plaintiff wrote Defendant Equifax to dispute the fraudulent Verizon Wireless account that Defendant Equifax was reporting on Plaintiff's Equifax credit report. Specifically, Plaintiff informed Equifax of the following: "I am writing to dispute certain information in my credit report. I recently became aware that I have been a victim of identity theft. These accounts do not belong to me and is causing grave harm to my credit profile." Plaintiff also requested that Equifax remove the fraudulent Verizon Wireless account from Plaintiff's credit report. Plaintiff attached her FTC Identity Theft Report with her dispute letter. Plaintiff's May 1, 2025 dispute letter was sent via certified mail.

161. Plaintiff did not receive a response from Equifax. Nevertheless, Equifax continued to report the fraudulent Verizon Wireless account on Plaintiff's Equifax credit reports.

162. By letter dated July 1, 2025 Plaintiff wrote Defendant Equifax to dispute the fraudulent Verizon Wireless account that it was reporting on Plaintiff's Equifax credit report. Specifically, Plaintiff informed Equifax of the following: "I am writing to dispute certain information in my credit report. I recently became aware that I have been a victim of identity

theft. These accounts do not belong to me and are causing grave harm to my credit profile."
Plaintiff also requested that Equifax remove the fraudulent Verizon Wireless account from
Plaintiff's credit report. Plaintiff's July 1, 2025 dispute letter was sent via certified mail.

### *Experian Disputes and Dispute Results*

163. By letter dated May 1, 2025, Plaintiff wrote Defendant Experian to dispute the fraudulent
Verizon Wireless account that Defendant Experian was reporting on Plaintiff's Experian
credit report. Specifically, Plaintiff informed Experian of the following: "I am writing to
dispute certain information in my credit report. I recently became aware that I have been a
victim of identity theft. These accounts do not belong to me and is causing grave harm to my
credit profile." Plaintiff also requested that Experian remove the fraudulent Verizon Wireless
account from Plaintiff's credit report. Plaintiff attached her FTC Identity Theft Report with
her dispute letter. Plaintiff's May 1, 2025 dispute letter was sent via certified mail.

164. Plaintiff did not receive a response from Experian. Nevertheless, Experian continued to
report the fraudulent Verizon Wireless account on the Plaintiff's Experian credit report

165. By letter dated July 1, 2025 Plaintiff wrote Defendant Experian to dispute the fraudulent
Verizon Wireless account that it was reporting on Plaintiff's Experian credit report.
Specifically, Plaintiff informed Experian of the following: "I am writing to dispute certain
information in my credit report. I recently became aware that I have been a victim of identity
theft. These accounts do not belong to me and are causing grave harm to my credit profile."
Plaintiff also requested that Experian remove the fraudulent Verizon Wireless account from
Plaintiff's credit report. Plaintiff's July 1, 2025 dispute letter was sent via certified mail.

*Trans Union Disputes and Dispute Results*

166. By letter dated May 1, 2025, Plaintiff wrote Defendant Trans Union to dispute the fraudulent Verizon Wireless account that Defendant Trans Union was reporting on Plaintiff's Trans Union credit report. Specifically, Plaintiff informed Trans Union of the following: "I am writing to dispute certain information in my credit report. I recently became aware that I have been a victim of identity theft. These accounts do not belong to me and is causing grave harm to my credit profile." Plaintiff also requested that Trans Union remove the fraudulent Verizon Wireless account from Plaintiff's credit report. Plaintiff attached her FTC Identity Theft Report with her dispute letter. Plaintiff's May 1, 2025 dispute letter was sent via certified mail.

167. Plaintiff did not receive a response from Trans Union. Nevertheless, Trans Union continued to report the fraudulent Verizon Wireless account on the Plaintiff's Trans Union credit report

168. By letter dated July 1, 2025 Plaintiff wrote Defendant Trans Union to dispute the fraudulent Verizon Wireless account that it was reporting on Plaintiff's Trans Union credit report. Specifically, Plaintiff informed Trans Union of the following: "I am writing to dispute certain information in my credit report. I recently became aware that I have been a victim of identity theft. These accounts do not belong to me and are causing grave harm to my credit profile." Plaintiff also requested that Trans Union remove the fraudulent Verizon Wireless account from Plaintiff's credit report. Plaintiff attached her FTC Identity Theft Report with her dispute letter. Plaintiff's July 1, 2025 dispute letter was sent via certified mail.

*Damages*

169. Because of Defendants Verizon Wireless', Equifax's, Experian's, and Trans Union's misconduct, Plaintiff suffered actual damages cognizable pursuant to the FCRA and NY FCRA.

170. Such damages include but are not necessarily limited to the following: impediments to Plaintiff's ability to seek credit, damage to Plaintiff's reputation for creditworthiness, emotional distress, embarrassment, aggravation, and frustration.

171. Moreover, Plaintiff will explore in discovery the extent to which the inaccurate reporting caused her credit harm in the form of credit denials and/or other adverse actions with respect to existing credit.

172. In addition, the inaccurate Verizon Wireless account tradeline reported by Equifax, Experian, and Trans Union has cost, and continues to cost, Plaintiff time and effort and expense in pursuit of corrected credit reports.

173. Verizon Wireless', Equifax's, Experian's, and Trans Union's publication of inaccurate information about Plaintiff caused Plaintiff to suffer damages cognizable pursuant to the FCRA and NY FCRA, including but not necessarily limited to the following:

   a. Plaintiff suffered substantial emotional distress. Plaintiff's emotional distress has manifested itself through a variety of symptoms, including stress, anxiety, headaches, difficulty sleeping, frustration, humiliation, apprehension about applying for credit, depression, and instances of crying.

   b. Plaintiff was defamed by Verizon Wireless, Equifax, Experian, and Trans Union all of which published false information about Plaintiff that damaged Plaintiff's reputation

Case 1:26-cv-00647-GHW    Document 3-2    Filed 01/26/26    Page 43 of 68

for creditworthiness and impugned Plaintiff's reputation. Such defamation further contributed to, among other things, Plaintiff's ongoing emotional distress.

### *Fingerhut/WebBank account*

174.  On or around June 2025, Plaintiff ran her Equifax credit report and noticed that Equifax was reporting a fraudulent Fingerhut/WebBank account on Plaintiff's Equifax credit report.

175. However, this fraudulent Fingerhut/WebBank account is inaccurate because Plaintiff was the victim of identity theft. An unknown individual(s) fraudulently opened the fraudulent Fingerhut/WebBank account at a date unknown to Plaintiff. This unknown individual(s) made fraudulent transactions on the fraudulent Fingerhut/WebBank account.

176. Following Plaintiff's disputes, Defendants Fingerhut, WebBank, and Equifax failed to perform FCRA-required reasonable investigations. As such, Defendants Fingerhut and WebBank unlawfully verified the fraudulent Fingerhut/WebBank account as belonging to Plaintiff and the CRA Defendants, in turn, continued to report an incorrect, and therefore unverifiable, fraudulent Fingerhut/WebBank account on (a) Plaintiff's credit reports and, upon information and belief, (b) consumer reports about Plaintiff that the CRA Defendant prepared and distributed to third-parties.

177. Fingerhut, WebBank, and Equifax included the fraudulent Fingerhut/WebBank account on consumer reports published to third parties. These publications defamed Plaintiff, thereby (a) giving creditors and/or potential creditors the false impression that Plaintiff was a poor credit risk, (b) impugning Plaintiff's reputation and character, and (c) causing Plaintiff to suffer substantial emotional distress. As such, Plaintiff has suffered concrete and particularized injuries pursuant to the FCRA such that Plaintiff has Article III standing to bring claims under the FCRA.

*Plaintiff's Disputes*

*Equifax Disputes and Dispute Results*

178. By letter dated July 1, 2025 Plaintiff wrote Defendant Equifax to dispute the fraudulent Fingerhut/WebBank account that it was reporting on Plaintiff's Equifax credit report. Specifically, Plaintiff informed Equifax of the following: "I am writing to dispute certain information in my credit report. I recently became aware that I have been a victim of identity theft. These accounts do not belong to me and are causing grave harm to my credit profile." Plaintiff also requested that Equifax remove the fraudulent Fingerhut/WebBank account from Plaintiff's credit report. Plaintiff attached her FTC Identity Theft Report with her dispute letter. Plaintiff's July 1, 2025 dispute letter was sent via certified mail.

179. Plaintiff did not receive a response from Equifax. However, Equifax continued to report the fraudulent Fingerhut/WebBank account on Plaintiff's Equifax credit report.

180. By letter dated August 2025, Plaintiff once again wrote Defendant Equifax to dispute the fraudulent Fingerhut/WebBank account that it was reporting on Plaintiff's Equifax credit report. Specifically, Plaintiff informed Equifax of the following: "The following accounts continue to harm my credit despite previous disputes and documentation showing they were opened without my authorization." Plaintiff also requested that Equifax remove the fraudulent Fingerhut/WebBank account from Plaintiff's credit report. Plaintiff attached her FTC Identity Theft Report with her dispute letter. Plaintiff's August 2025 dispute letter was sent via certified mail.

181. Plaintiff once again did not receive a response from Equifax. However, Equifax once again continued to report the fraudulent Fingerhut/WebBank account on Plaintiff's Equifax credit report.

43

*Damages*

182. Because of Defendants Fingerhut's, WebBank's, and Equifax's misconduct, Plaintiff suffered actual damages cognizable pursuant to the FCRA and NY FCRA.

183. Such damages include but are not necessarily limited to the following: impediments to Plaintiff's ability to seek credit, damage to Plaintiff's reputation for creditworthiness, emotional distress, embarrassment, aggravation, and frustration.

184. Moreover, Plaintiff will explore in discovery the extent to which the inaccurate reporting caused her credit harm in the form of credit denials and/or other adverse actions with respect to existing credit.

185. In addition, the inaccurate Fingerhut/WebBank account tradeline reported by Equifax has cost, and continues to cost, Plaintiff time and effort and expense in pursuit of corrected credit reports.

186. Fingerhut's, WebBank's, and Equifax's publication of inaccurate information about Plaintiff caused Plaintiff to suffer damages cognizable pursuant to the FCRA and NY FCRA, including but not necessarily limited to the following:

   a. Plaintiff suffered substantial emotional distress. Plaintiff's emotional distress has manifested itself through a variety of symptoms, including stress, anxiety, headaches, difficulty sleeping, frustration, humiliation, apprehension about applying for credit, depression, and instances of crying.

   b. Plaintiff was defamed by Fingerhut, WebBank, and Equifax all of which published false information about Plaintiff that damaged Plaintiff's reputation for creditworthiness and impugned Plaintiff's reputation. Such defamation further contributed to, among other things, Plaintiff's ongoing emotional distress.

44

## *Self Financial accounts*

187. On or around July 2025, Plaintiff ran her Equifax and Trans Union credit reports and noticed that Equifax and Trans Union were reporting fraudulent Self Financial tradelines on Plaintiff's Equifax and Trans Union credit reports.

188. However, the fraudulent Self Financial tradelines were inaccurate because Plaintiff was the victim of identity theft. An unknown individual(s) fraudulently opened the fraudulent Self Financial accounts at a date unknown to Plaintiff. The unknown individual(s) made fraudulent transactions on the fraudulent Self Financial accounts.

189. Following Plaintiff's disputes, Defendants Self Financial, Equifax, and Trans Union failed to perform FCRA-required reasonable investigations. As such, Defendants Self Financial unlawfully verified the fraudulent Self Financial tradelines as belonging to Plaintiff and the CRA Defendants, in turn, continued to report incorrect, and therefore unverifiable, fraudulent Self Financial tradelines on (a) Plaintiff's credit reports and, upon information and belief, (b) consumer reports about Plaintiff that the CRA Defendant prepared and distributed to third-parties.

190. Self Financial, Equifax, and Trans Union included the fraudulent Self Financial accounts on consumer reports published to third parties. These publications defamed Plaintiff, thereby (a) giving creditors and/or potential creditors the false impression that Plaintiff was a poor credit risk, (b) impugning Plaintiff's reputation and character, and (c) causing Plaintiff to suffer substantial emotional distress. As such, Plaintiff has suffered concrete and particularized injuries pursuant to the FCRA such that Plaintiff has Article III standing to bring claims under the FCRA.

Case 1:26-cv-00647-GHW   Document 3-2   Filed 01/26/26   Page 47 of 68

*Plaintiff's Disputes*

*Equifax Disputes and Dispute Results*

191. On or around August, 2025 Plaintiff through letter wrote Defendant Equifax to dispute the fraudulent Self Financial tradelines that were reporting on Plaintiff's Equifax credit report. Specifically, Plaintiff informed Equifax of the following: "I am writing to dispute repeated FCRA violations stemming from Equifax's failure to permanently correct fraudulent information in my credit file." Plaintiff also requested that Equifax remove the fraudulent Self Financial tradelines from Plaintiff's credit report. Plaintiff attached her FTC Identity Theft Report with her dispute letter. Plaintiff's August, 2025 dispute letter was sent via certified mail.

192. Plaintiff did not receive a response from Equifax. However, Equifax continued to report the fraudulent Self Financial tradelines on Plaintiff's Equifax credit report.

*Trans Union Disputes and Dispute Results*

193. On or around August, 2025 Plaintiff through letter wrote Defendant Trans Union to dispute the fraudulent Self Financial tradelines that were reporting on Plaintiff's Trans Union credit report. Specifically, Plaintiff informed Trans Union of the following: "I am writing to dispute and demand immediate removal of fraudulent information from my credit file. I am a victim of identity theft." Plaintiff also requested that Trans Union remove the fraudulent Self Financial tradelines from Plaintiff's credit report. Plaintiff attached her FTC Identity Theft Report with her dispute letter. Plaintiff's August, 2025 dispute letter was sent via certified mail.

194. Plaintiff did not receive a response from Trans Union. However, Trans Union continued to report the fraudulent Self Financial tradelines on Plaintiff's Trans Union credit report.

46

*Damages*

195. Because of Defendants Self Financial's, Equifax's, and Trans Union's misconduct, Plaintiff suffered actual damages cognizable pursuant to the FCRA and NY FCRA.

196. Such damages include but are not necessarily limited to the following: impediments to Plaintiff's ability to seek credit, damage to Plaintiff's reputation for creditworthiness, emotional distress, embarrassment, aggravation, and frustration.

197. Moreover, Plaintiff will explore in discovery the extent to which the inaccurate reporting caused her credit harm in the form of credit denials and/or other adverse actions with respect to existing credit.

198. In addition, the inaccurate Self Financial accounts tradelines reported by Equifax and Trans Union have cost, and continue to cost, Plaintiff time and effort and expense in pursuit of corrected credit reports.

199. Self Financial's, Equifax's, and Trans Union's publication of inaccurate information about Plaintiff caused Plaintiff to suffer damages cognizable pursuant to the FCRA and NY FCRA, including but not necessarily limited to the following:

   a. Plaintiff suffered substantial emotional distress. Plaintiff's emotional distress has manifested itself through a variety of symptoms, including stress, anxiety, headaches, difficulty sleeping, frustration, humiliation, apprehension about applying for credit, depression, and instances of crying.

   b. Plaintiff was defamed by Self Financial, Equifax, and Trans Union all of which published false information about Plaintiff that damaged Plaintiff's reputation for creditworthiness and impugned Plaintiff's reputation. Such defamation further contributed to, among other things, Plaintiff's ongoing emotional distress.

47

*Additional inaccurate accounts reported by the CRA Defendants*

*Equifax Disputes and Dispute Results*

200. Plaintiff sent a dispute later in August 2025 to Equifax informing them that her credit report reflects numerous student loan tradelines, many of which appeared duplicative, inconsistent or incomplete preventing Plaintiff from determining their accuracy and requested Equifax to provide a complete and accurate disclosure of the information in her file under § 609(a)(1) of the FCRA and a full breakdown of all student loans accounts currently appearing in credit report so that she may verify the accuracy herself. Plaintiff further contended that there is no personal information on file for her, her credit reports contain blank fields, no data entries, and unexplained omissions which violate the requirement to maintain reasonable procedures for accuracy under § 607(b).

201. Moreover, Plaintiff did not receive a response, however, Equifax continued to report the inaccurate student loan accounts and failed to update personal information on Plaintiff's Equifax credit report.

*Experian Disputes and Dispute Results*

202. By letter dated May 14, 2025, Plaintiff wrote Defendant Experian to dispute the fraudulent AES/ECMC account number 314963**** that Defendant Experian was reporting on Plaintiff's Experian credit report. Specifically, Plaintiff informed Experian of the following: "I am writing to dispute certain information in my credit report. I am a victim of Identity Theft . . . The following items do not belong to me and is causing grave harm to my credit profile." Plaintiff also requested that Experian remove the fraudulent account from Plaintiff's credit report. Plaintiff attached her FTC Identity Theft Victim's Complaint and Affidavit with her dispute letter. Plaintiff's May 14, 2025 dispute letter was sent via certified mail.

203. Plaintiff did not receive a response from Experian. However, Experian continued to report the fraudulent account on the Plaintiff's Experian credit report.

204. Notably, Plaintiff also observed an inquiry by ACHIEVEPL/CRB on her June 2025 Experian credit report.

205. By letter dated June 28, 2025 Plaintiff once again wrote Defendant Experian to dispute the hard inquiry by ACHIEVEPL/CRB (made on 9/8/2023) that it was reporting on Plaintiff's Experian credit report. Specifically, Plaintiff informed Experian of the following: "I am writing to dispute certain information in my credit report. I am a victim of Identity Theft . . . The following items do not belong to me and is causing grave harm to my credit profile." Plaintiff also requested that Experian remove the hard inquiry from Plaintiff's credit report. Plaintiff attached her FTC Identity Theft Victim's Complaint and Affidavit with her dispute letter. Plaintiff's June 28, 2025 dispute letter was sent via certified mail.

206. Plaintiff did not receive a reply, however, Experian continued to report the hard inquiry on Plaintiff's Experian credit report.

207. Notably, further fraudulent accounts also emerged in Plaintiff's August 2025 Experian credit report, which do not belong to Plaintiff:

- CHKG/NETFLIX – Account # 56E91F**** – Telecom
- CHKG/VISIBLE – Account # BBEC82**** – Wireless
- CHKG/STARZ – Account # E48101****– Telecom
- Dept of Education/Nelnet Accounts # 900000****- Student Loans

208. Plaintiff then sent a third dispute later in August 2025 to Experian disputing the continued reporting of the fraudulent accounts: Self-Reported Telecom accounts and Dept of Education/Nelnet accounts- 900000**** as mentioned above. Specifically, Plaintiff informed Experian of the following: "I am writing to dispute certain information in my credit report. I am a victim of Identity Theft . . . The following items do not belong to me and are

49

causing grave harm to my credit profile." Plaintiff also requested that Experian remove the Self-Reported Telecom accounts from Plaintiff's credit report. Plaintiff also informed Experian that her credit report reflects numerous Dept of Education/Nelnet student loan accounts and due to the sheer volume and inconsistency of the entries she cannot tell which accounts are valid, duplicated or inaccurate and requested Experian to provide a complete and accurate disclosure of the information in her file under § 609(a)(1) of the FCRA and a full breakdown of all student loans accounts currently appearing in credit report so that she may verify the accuracy herself.

209. Moreover, Plaintiff did not receive a response, however, Experian continued to report the fraudulent, inconsistent and inaccurate student loan accounts on Plaintiff's Experian credit report.

210. Notably, the student loan accounts continue to report on Plaintiff's Experian credit reports which do not belong to Plaintiff.

***Trans Union Disputes and Dispute Results***

211. By letter dated May 14, 2025, Plaintiff wrote Defendant Trans Union to dispute the fraudulent AES/ECMC account number 314963**** that Defendant Trans Union was reporting on Plaintiff's Trans Union credit report. Specifically, Plaintiff informed Trans Union of the following: "I am writing to dispute certain information in my credit report. I am a victim of Identity Theft . . . The following items do not belong to me and is causing grave harm to my credit profile." Plaintiff also requested that Trans Union remove the fraudulent account from Plaintiff's credit report. Plaintiff attached her FTC Identity Theft Victim's Complaint and Affidavit with her dispute letter. Plaintiff's May 14, 2025 dispute letter was sent via certified mail.

Case 1:26-cv-00647-GHW    Document 3-2    Filed 01/26/26    Page 52 of 68

212. Plaintiff did not receive a response from Trans Union. However, Trans Union continued to report the fraudulent account on the Plaintiff's Trans Union credit report.

213. Notably, Plaintiff then pulled her Trans Union credit reports in the month of August 2025 which revealed that further fraudulent accounts also emerged which do not belong to the Plaintiff which include twenty-one Dept of Education/Nelnet accounts.

214. Plaintiff then sent a third dispute later in August 2025 to Trans Union disputing the reporting of the fraudulent accounts Dept of Education/Nelnet accounts- 900000****, as mentioned above. Specifically, Plaintiff informed Trans Union of the following: "I am writing to dispute and demand immediate removal of the fraudulent information from my credit report. I am a victim of identity theft… the following accounts have been reported without my knowledge, consent or authorization." Plaintiff also requested that Trans Union remove the Dept of Education/Nelnet accounts from Plaintiff's credit report. Plaintiff also informed Trans Union that her credit report reflects numerous Dept of Education/Nelnet student loan accounts and due to the sheer volume and inconsistency of the entries she cannot tell which accounts are valid, duplicated or inaccurate and requested Trans Union to provide a complete and accurate disclosure of the information in her file under § 609(a)(1) of the FCRA and a full breakdown of all student loans accounts currently appearing in credit report so that she may verify the accuracy herself.

215. Plaintiff then pulled her Trans Union credit report in the month of September 2025 which revealed that the Dept of Education/Nelnet accounts continue to report on Plaintiff's Trans Union credit report which do not belong to the Plaintiff.

51

*Damages*

216. Because of Equifax's, Experian's, and Trans Union's misconduct, Plaintiff suffered actual damages cognizable pursuant to the FCRA and NY FCRA.

217. Such damages include but are not necessarily limited to the following: impediments to Plaintiff's ability to seek credit, damage to Plaintiff's reputation for creditworthiness, emotional distress, embarrassment, aggravation, and frustration.

218. Moreover, Plaintiff will explore in discovery the extent to which the inaccurate reporting caused her credit harm in the form of credit denials and/or other adverse actions with respect to existing credit.

219. In addition, the fraudulent account tradelines reported by Equifax, Experian, and Trans Union has cost Plaintiff time and effort and expense in pursuit of corrected credit reports.

220. Equifax's Experian's, and Trans Union's publication of inaccurate information about Plaintiff caused Plaintiff to suffer damages cognizable pursuant to the FCRA and NY FCRA, including but not necessarily limited to the following:

    a. Plaintiff suffered substantial emotional distress. Plaintiff's emotional distress has manifested itself through a variety of symptoms, including stress, anxiety, headaches, difficulty sleeping, frustration, humiliation, apprehension about applying for credit, depression, and instances of crying.

    b. Plaintiff was defamed by Equifax, Experian, and Trans Union all of which published false information about Plaintiff that damaged Plaintiff's reputation for creditworthiness and impugned Plaintiff's reputation. Such defamation further contributed to, among other things, Plaintiff's ongoing emotional distress.

## FIRST CAUSE OF ACTION

### Violations of FCRA § 1681s-2(b) Against
### Defendant MCM
### (Furnisher of Information)

221. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

222. FCRA § 1681s-2(b), in pertinent part, provides: "if an item of information disputed by a consumer is found [by a furnisher] to be inaccurate or incomplete *or cannot be verified* after any reinvestigation . . . for purposes of reporting to a consumer reporting agency only, [the furnisher shall] . . . , based on the results of the reinvestigation promptly— (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information." § 1681s-2(b)(1)(E)(i) – (iii) (emphasis added).

223. MCM violated FCRA § 1681s-2(b) by its acts and omissions, including but not limited to:

   a. failing to conduct a reasonable investigation of Plaintiff's disputes after receiving notice of those disputes from Equifax, Experian, and Trans Union;

   b. failing to review all relevant information provided by Equifax, Experian, and Trans Union; and

   c. failing to promptly modify, delete, or permanently block any information it could not affirmatively verify as accurate, in violation of § 1681s-2(b)(1).

224. Had MCM performed reasonable investigations required by the FCRA, it could not have verified that the fraudulent MCM account reported by Equifax, Experian, and Trans Union were accurate. Nevertheless, MCM did verify to the CRA Defendants that the disputed MCM account tradeline that Equifax, Experian, and Trans Union were reporting was accurate. In doing so, MCM violated § 1681s-2(b).

225. Because of MCM's FCRA violations, Plaintiff suffered actual damages cognizable pursuant

to the FCRA.

226. MCM's violations of § 1681s-2(b) were willful, rendering MCM liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

227. In the alternative, MCM's violations of § 1681s-2(b) were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees from MCM pursuant to § 1681o.

### SECOND CAUSE OF ACTION

### Violations of FCRA § 1681s-2(b) Against
### Defendants LVNV and Resurgent
### (Furnishers of Information)

228. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

229. FCRA § 1681s-2(b), in pertinent part, provides: "if an item of information disputed by a consumer is found [by a furnisher] to be inaccurate or incomplete *or cannot be verified* after any reinvestigation . . . for purposes of reporting to a consumer reporting agency only, [the furnisher shall] . . . , based on the results of the reinvestigation promptly— (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information." § 1681s-2(b)(1)(E)(i) – (iii) (emphasis added).

230. LVNV and Resurgent violated FCRA § 1681s-2(b) by its acts and omissions, including but not limited to:

  a.  failing to conduct a reasonable investigation of Plaintiff's disputes after receiving notice of those disputes from Equifax, Experian, and Trans Union;

  b.  failing to review all relevant information provided by Equifax, Experian, and Trans Union; and

    c.  failing to promptly modify, delete, or permanently block any information it could not affirmatively verify as accurate, in violation of § 1681s-2(b)(1).

231. Had LVNV and Resurgent performed reasonable investigations required by the FCRA, it could not have verified that the fraudulent LVNV/Resurgent account reported by Equifax, Experian, and Trans Union was accurate. Nevertheless, LVNV and Resurgent did verify to the CRA Defendants that the fraudulent LVNV/Resurgent account tradeline that Equifax, Experian, and Trans Union were reporting was accurate. In so doing, LVNV and Resurgent violated § 1681s-2(b).

232. Because of LVNV's and Resurgent's FCRA violations, Plaintiff suffered actual damages cognizable pursuant to the FCRA.

233. LVNV and Resurgent's violations of § 1681s-2(b) were willful, rendering LVNV and Resurgent liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

234. In the alternative, LVNV's and Resurgent's violations of § 1681s-2(b) were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees from LVNV/Resurgent pursuant to § 1681o.

### THIRD CAUSE OF ACTION

**Violations of FCRA § 1681s-2(b) Against
Defendant IQ Data
(Furnisher of Information)**

235. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

236. FCRA § 1681s-2(b), in pertinent part, provides: "if an item of information disputed by a consumer is found [by a furnisher] to be inaccurate or incomplete *or cannot be verified* after any reinvestigation . . . for purposes of reporting to a consumer reporting agency only, [the

furnisher shall] . . . , based on the results of the reinvestigation promptly— (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information." § 1681s-2(b)(1)(E)(i) – (iii) (emphasis added).

237. IQ Data violated FCRA § 1681s-2(b) by its acts and omissions, including but not limited to:

    a. failing to conduct a reasonable investigation of Plaintiff's disputes after receiving notice of those disputes from Equifax, Experian, and Trans Union;

    b. failing to review all relevant information provided by Equifax, Experian, and TransUnion; and

    c. failing to promptly modify, delete, or permanently block any information it could not affirmatively verify as accurate, in violation of § 1681s-2(b)(1).

238. Had IQ Data performed reasonable investigations required by the FCRA, it could not have verified that the fraudulent IQ Data account reported by Equifax, Experian, and TransUnion was accurate. Nevertheless, IQ Data did verify to the CRA Defendants that the fraudulent IQ Data account tradeline that Equifax, Experian, and TransUnion were reporting was accurate. In so doing, IQ Data violated § 1681s-2(b).

239. Because of IQ Data's FCRA violations, Plaintiff suffered actual damages cognizable pursuant to the FCRA

240. IQ Data's violations of § 1681s-2(b) were willful, rendering IQ Data liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

241. In the alternative, IQ Data's violations of § 1681s-2(b) were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees from IQ Data pursuant to § 1681o.

## FOURTH CAUSE OF ACTION

### Violations of FCRA § 1681s-2(b) Against
### Defendant Sezzle
### (Furnisher of Information)

242. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

243. FCRA § 1681s-2(b), in pertinent part, provides: "if an item of information disputed by a consumer is found [by a furnisher] to be inaccurate or incomplete *or cannot be verified* after any reinvestigation . . . for purposes of reporting to a consumer reporting agency only, [the furnisher shall] . . . , based on the results of the reinvestigation promptly— (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information." § 1681s-2(b)(1)(E)(i) – (iii) (emphasis added).

244. Sezzle violated FCRA § 1681s-2(b) by its acts and omissions, including but not limited to:

    a. failing to conduct a reasonable investigation of Plaintiff's disputes after receiving notice of those disputes from Equifax and Experian;

    b. failing to review all relevant information provided by Equifax and Experian;

    c. failing to promptly modify, delete, or permanently block any information it could not affirmatively verify as accurate, in violation of § 1681s-2(b)(1).

245. Had Sezzle performed reasonable investigations required by the FCRA, it could not have verified that the fraudulent Sezzle account reported by Equifax and Experian was accurate. Nevertheless, Sezzle did verify to the CRA Defendants that the disputed Sezzle account tradeline that Equifax and Experian were reporting was accurate. In doing so, Sezzle violated § 1681s-2(b).

246. Because of Sezzle's FCRA violations, Plaintiff suffered actual damages cognizable pursuant to the FCRA.

247. Sezzle's violations of § 1681s-2(b) were willful, rendering Sezzle liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

248. In the alternative, Sezzle's violations of § 1681s-2(b) were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees from Sezzle pursuant to § 1681o.

### FIFTH CAUSE OF ACTION

**Violations of FCRA § 1681s-2(b) Against**
**Defendant Verizon Wireless**
**(Furnisher of Information)**

249. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

250. FCRA § 1681s-2(b), in pertinent part, provides: "if an item of information disputed by a consumer is found [by a furnisher] to be inaccurate or incomplete *or cannot be verified* after any reinvestigation . . . for purposes of reporting to a consumer reporting agency only, [the furnisher shall] . . . , based on the results of the reinvestigation promptly— (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information." § 1681s-2(b)(1)(E)(i) – (iii) (emphasis added).

251. Verizon Wireless violated FCRA § 1681s-2(b) by its acts and omissions, including but not limited to:

  a. failing to conduct a reasonable investigation of Plaintiff's disputes after receiving notice of those disputes from Equifax, Experian, and Trans Union;

  b. failing to review all relevant information provided by Equifax, Experian, and Trans Union;

  c. failing to promptly modify, delete, or permanently block any information it could not

affirmatively verify as accurate, in violation of § 1681s-2(b)(1).

252. Had Verizon Wireless performed reasonable investigations required by the FCRA, it could not have verified that the fraudulent Verizon Wireless account reported by Equifax, Experian, and Trans Union was accurate. Nevertheless, Verizon Wireless did verify to the CRA Defendants that the disputed Verizon Wireless account tradeline that Equifax, Experian, and Trans Union were reporting was accurate. In doing so, Verizon Wireless violated § 1681s-2(b).

253. Because of Verizon Wireless's FCRA violations, Plaintiff suffered actual damages cognizable pursuant to the FCRA.

254. Verizon Wireless's violations of § 1681s-2(b) were willful, rendering Verizon Wireless liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

255. In the alternative, Verizon Wireless's violations of § 1681s-2(b) were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees from Verizon Wireless pursuant to § 1681o.

## SIXTH CAUSE OF ACTION

### Violations of FCRA § 1681s-2(b) Against
### Defendants Fingerhut and WebBank
### (Furnishers of Information)

256. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

257. FCRA § 1681s-2(b), in pertinent part, provides: "if an item of information disputed by a consumer is found [by a furnisher] to be inaccurate or incomplete *or cannot be verified* after any reinvestigation . . . for purposes of reporting to a consumer reporting agency only, [the furnisher shall] . . . , based on the results of the reinvestigation promptly— (i) modify that

59

Case 1:26-cv-00647-GHW    Document 3-2    Filed 01/26/26    Page 61 of 68

item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information." § 1681s-2(b)(1)(E)(i) – (iii) (emphasis added).

258. Fingerhut and WebBank violated FCRA § 1681s-2(b) by its acts and omissions, including but not limited to:

    a. failing to conduct a reasonable investigation of Plaintiff's disputes after receiving notice of those disputes from Equifax;

    b. failing to review all relevant information provided by Equifax;

    c. failing to promptly modify, delete, or permanently block any information it could not affirmatively verify as accurate, in violation of § 1681s-2(b)(1).

259. Had Fingerhut and WebBank performed reasonable investigations required by the FCRA, it could not have verified that the fraudulent Fingerhut/WebBank account reported by Equifax was accurate. Nevertheless, Fingerhut and WebBank did verify to the CRA Defendant that the disputed Fingerhut/WebBank account tradeline that Equifax was reporting was accurate. In doing so, Fingerhut and WebBank violated § 1681s-2(b).

260. Because of Fingerhut's and WebBank's FCRA violations, Plaintiff suffered actual damages cognizable pursuant to the FCRA.

261. Fingerhut's and WebBank's violations of § 1681s-2(b) were willful, rendering Fingerhut and WebBank liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

262. In the alternative, Fingerhut's and WebBank's violations of § 1681s-2(b) were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees from Fingerhut and WebBank pursuant to § 1681o.

## SEVENTH CAUSE OF ACTION

### Violations of FCRA § 1681s-2(b) Against
### Defendant Self Financial
### (Furnisher of Information)

263. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

264. FCRA § 1681s-2(b), in pertinent part, provides: "if an item of information disputed by a consumer is found [by a furnisher] to be inaccurate or incomplete *or cannot be verified* after any reinvestigation . . . for purposes of reporting to a consumer reporting agency only, [the furnisher shall] . . . , based on the results of the reinvestigation promptly— (i) modify that item of information; (ii) delete that item of information; or (iii) permanently block the reporting of that item of information." § 1681s-2(b)(1)(E)(i) – (iii) (emphasis added).

265. Self Financial violated FCRA § 1681s-2(b) by its acts and omissions, including but not limited to:

   a. failing to conduct a reasonable investigation of Plaintiff's disputes after receiving notice of those disputes from Equifax and Trans Union;

   b. failing to review all relevant information provided by Equifax and Trans Union;

   c. failing to promptly modify, delete, or permanently block any information it could not affirmatively verify as accurate, in violation of § 1681s-2(b)(1).

266. Had Self Financial performed reasonable investigations required by the FCRA, it could not have verified that the fraudulent Self Financial tradelines reported by Equifax and Trans Union were accurate. Nevertheless, Self Financial did verify to the CRA Defendants that the disputed Self Financial accounts tradelines that Equifax and Trans Union were reporting were accurate. In doing so, Self Financial violated § 1681s-2(b).

267. Because of Self Financial's FCRA violations, Plaintiff suffered actual damages cognizable

pursuant to the FCRA.

268. Self Financial's violations of § 1681s-2(b) were willful, rendering Self Financial liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

269. In the alternative, Self Financial's violations of § 1681s-2(b) were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees from Self Financial pursuant to § 1681o.

### EIGHTH CAUSE OF ACTION

**Violations of FCRA § 1681i and § 1681c-2**
**Against Defendants Equifax, Experian and TransUnion**
**(Consumer Reporting Agencies)**

270. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

271. FCRA § 1681i(a)(1) requires a CRA to complete a reasonable reinvestigation of the accuracy of any item of information in a consumer's credit file that the consumer disputes to the CRA within 30 days of the dispute. Pursuant to § 1681i(a)(5), a CRA must "promptly delete [disputed] information from the file of the consumer, or modify [disputed] information, as appropriate" after completing its § 1681i(a)(1) reinvestigation if the CRA finds that the disputed information is "inaccurate or incomplete *or cannot be verified*." §§ 1681i(a)(1) and (a)(5) (emphasis added).

272. Equifax, Experian, and Trans Union violated multiple sections of 15 U.S.C. § 1681i by their acts and omissions, including, but not limited to, the following:

    a. failing to conduct a reasonable reinvestigation of Plaintiff's disputes to determine whether the disputed information was inaccurate and record the correct status or delete the items from Plaintiff's credit files in violation of § 1681i(a)(1);

b. failing to review and consider all relevant information submitted by Plaintiff concerning Plaintiff's disputes, in violation of § 1681i(a)(4); and

c. failing to properly modify or delete disputed information on and/or from Plaintiff's credit files upon a lawful reinvestigation in violation of § 1681i(a)(5).

d. In addition, in August 2025, Plaintiff pulled out her Equifax and Experian credit reports and observed a previously deleted LVNV/Resurgent account reappearing on her credit report. Equifax and Experian failed to provide Plaintiff with any written notice of reinsertion as required under § 1681i(a)(5)(B) and (C), nor did it obtain a certification of accuracy from the furnisher before re-reporting the account. This reinsertion, made without proper notice and in disregard of the reinvestigation procedures mandated by the FCRA, demonstrates that Equifax and Experian failed to employ reasonable procedures to ensure maximum possible accuracy and to comply with its obligations under the statute. As a result of Equifax's and Experian's conduct, Plaintiff suffered damages including but not limited to emotional distress, credit denial, reputational harm, and time spent disputing the inaccurate information.

273. Equifax, Experian, and TransUnion also violated §1681c-2 by failing to block information that Plaintiff identified as resulting from an alleged identify theft, and upon information and belief, failing to notify MCM, LVNV, Resurgent, IQ Data, Sezzle, Verizon Wireless, Fingerhut, WebBank, and Self Financial that the information was required to be blocked, in violation of §1681c-2(b).

274. Had the CRA Defendants reasonably investigated Plaintiff's disputes, the CRA Defendants could not have verified that they were reporting accurate MCM, LVNV/Resurgent, IQ Data, Sezzle, Verizon Wireless, Fingerhut/WebBank, and Self Financial tradelines on Plaintiff's

Equifax, Experian, and Trans Union credit reports. Nevertheless, following Plaintiff's disputes, Equifax, Experian, and Trans Union each verified and continued to report the fraudulent MCM, LVNV/Resurgent, IQ Data, Sezzle, Verizon Wireless, Fingerhut/WebBank, and Self Financial tradelines on Plaintiff's Equifax, Experian, and Trans Union credit reports. In so doing, the CRA Defendants violated § 1681i (and a corresponding provision of the NY FCRA).

275. Because of the CRA Defendants' FCRA violations of § 1681i and § 1681c-2, Plaintiff suffered actual damages, including, but not limited to: loss of credit, damage to reputation, embarrassment, humiliation, anguish and other emotional harm cognizable pursuant to the FCRA.

276. Violations of § 1681i and § 1681c-2 by Equifax, Experian, and Trans Union were willful, rendering the CRA Defendants liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

277. In the alternative, the CRA Defendants' violations of § 1681i and § 1681c-2 were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees from the CRA Defendants pursuant to § 1681o.

## NINTH CAUSE OF ACTION

**Violations of NY FCRA § 380-f and § 380-j**
**Against Defendants Equifax, Experian and TransUnion**
**(Consumer Reporting Agencies)**

278. Plaintiff realleges and incorporates the above paragraphs as if reasserted and realleged herein.

279. Equifax, Experian, and Trans Union violated multiple sections of the NY FCRA (NY GBL §§ 380-380-u) by their acts and omissions.

280. Equifax, Experian, and TransUnion violated the NY FCRA by:

    a. failing to promptly and properly reinvestigate Plaintiff's disputes to determine whether the disputed information was inaccurate and record the correct status of the disputed information in violation of § 380-f(a);

    b. failing to maintain reasonable procedures to assure maximum possible accuracy of information maintained in Plaintiff's credit files, in violation of § 380-j(a); and

    c. failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy of information in consumer reports that Equifax, Experian, and Trans Union distributed to third parties, in violation of § 380-j(e).

281. These violations of § 380-f and § 380-j were willful, making the CRA Defendants liable for actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 380-l. Plaintiff is also entitled to injunctive relief restraining Equifax, Experian, and Trans Union from any further violations of Plaintiff's rights pursuant to the NY FCRA.

282. In the alternative, the CRA Defendants' violations of §§ 380-f and 380-j were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to § 380-m.

283. Plaintiff is also entitled to injunctive relief restraining the CRA Defendants from any further violations of Plaintiff's rights pursuant to the NY FCRA.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby respectfully requests a trial by jury for all claims and issues in her Complaint to which she is or may be entitled to a jury trial.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages and equitable relief against Defendants:

1. Awarding Plaintiff against each Defendant actual damages, statutory damages, punitive damages, costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1681n and § 1681o as well as, with regard to the CRA Defendants, NY GBL § 380-l and § 380-m;

2. Ordering Equifax, Experian and TransUnion to:

    a. immediately and permanently (i) delete and/or update all fraudulent information concerning the fraudulent MCM, LVNV/Resurgent, IQ Data, Sezzle, Verizon Wireless, Fingerhut/WebBank, Self Financial, and Dept of Education/Nelnet accounts from and/or on Plaintiff's credit reports and files, and (ii) cease reporting inaccurate information concerning the fraudulent accounts to any and all persons and entities to whom the CRA Defendants reports consumer credit information; and

    b. send updated and corrected consumer reports to all persons and entities to whom the CRA Defendants have reported fraudulent information about the fraudulent MCM, LVNV/Resurgent, IQ Data, Sezzle, Verizon Wireless, Fingerhut/WebBank, Self Financial, and Dept of Education/Nelnet accounts;

    c. **grant Plaintiff tradeline deletion of the MCM, LVNV/Resurgent, IQ Data, Sezzle, Verizon Wireless, Fingerhut/WebBank, Self Financial, and Dept of Education/Nelnet accounts**.

3. Enjoining the CRA Defendants from violating Plaintiff's NY FCRA rights; and

4. Such other and further relief as may be necessary, just, and proper.

Dated: December 31, 2025

Respectfully submitted,

_____

Subhan Tariq, Esq.
Tariq Law PC
**Attorney for Plaintiff**
99 Park Avenue, Suite 1530
New York, NY 10016
Telephone: (212) 804-9095
Email: subhan@tariqlaw.com

67